**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

RANDALL W. D.,[1]

    Plaintiff,

        v.                        Civil No. 3:19cv911

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.

## MEMORANDUM OPINION

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying the application of Randall W. D. ("Plaintiff") for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Plaintiff was fifty-three years old at the time of his application and previously worked as a painter, handyman, carpenter, and forklift operator. (R. 70-71, 239-40.) On November 2, 2016, Plaintiff fell from a significant height, suffering bilateral calcaneus[2] fractures. (R. at 22.) Plaintiff also suffers from chronic obstructive pulmonary disease ("COPD"), asthma, gastroesophageal reflux disease ("GERD"), depression, and substance abuse disorder. (R. at 20.)

An Administrative Law Judge ("ALJ") denied Plaintiff's application for DIB but granted his request for Supplemental Security Income ("SSI"). (R. at 27.) Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that the ALJ erred by

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The calcaneus bone, also known as the heel bone, is the large bone that forms the foundation of the rear part of the foot. *Calcaneus*, *Stedmans Medical Dictionary* (27th ed. 2000), Westlaw STEDMANS 132400.

unreasonably excluding Plaintiff's need for an assistive device—a cane—from Plaintiff's residual functional capacity ("RFC") determination. (Plaintiff's Brief in Support of Motion for Summary Judgment at 10, ECF No. 16 ("Pl.'s Mem.").) This matter now comes before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1), on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[3] For the reasons set forth below, the Court GRANTS Plaintiff's Motion for Summary Judgment (ECF No. 15) to the extent it seeks reversal and remand of the Commissioner's decision and DENIES Plaintiff's Motion to the extent it seeks an order directing the award of benefits. The Court DENIES Defendant's Motion for Summary Judgment (ECF No. 19) and VACATES AND REMANDS the final decision of the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g).

## I. PROCEDURAL HISTORY

On November 25, 2016, Plaintiff filed an application for DIB and SSI with an alleged onset date of November 9, 2016. (R. at 18.) The Social Security Administration ("SSA") denied Plaintiff's claims initially on February 24, 2017, and again upon reconsideration on July 21, 2017. (R. at 18.) Plaintiff requested a hearing before an ALJ, and the hearing was held on July 25, 2018. (R. at 18, 35.) On October 18, 2018, the ALJ issued a written opinion denying Plaintiff's request for DIB but granting his request for SSI beginning on Plaintiff's birthday in 2018. (R. at 25-27.) On October 21, 2019, the SSA Appeals Council denied Plaintiff's request for review, rendering

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-3.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in

3

the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The ALJ's failure to 'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).

SSA regulations set forth a five-step process that the agency must use to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). At step one, the ALJ evaluates the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC, accounting for the most the claimant can do despite his physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

On July 25, 2018, the ALJ conducted a hearing during which Plaintiff, represented by counsel, and a vocational expert testified. (R. at 35-75.) On October 18, 2018, the ALJ issued a written opinion denying Plaintiff's claim for DIB, concluding that he was not disabled at any point

4

through his last insured date of December 31, 2017.[4] (R. at 27.) The ALJ granted Plaintiff's request for SSI, beginning on his fifty-fifth birthday in 2018, when Plaintiff qualified as an individual of advanced age under 20 C.F.R. § 404.1563. (R. at 26.) In analyzing Plaintiff's claims, the ALJ followed the five-step evaluation process established by the Act. (R. at 20-27.)

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of November 9, 2016. (R. at 20.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: fractures of the lower extremities, other bone fractures, COPD, and asthma. (R. at 20.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 21.)

After step three, the ALJ considered Plaintiff's RFC. (R. at 21-24.) The ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations:

> [H]e can stand for four hours; walk for four hours; climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; crawl occasionally; occasional exposure to humidity, dust, odors, fumes, pulmonary irritants, and vibration.

(R. at 21.) The ALJ's RFC determination did not mention Plaintiff's use of a cane.

At step four, the ALJ determined that Plaintiff could not perform his past relevant work as a brush painter, spray painter, general laborer, maintenance laborer, forklift operator, or

---

[4] In order to qualify for DIB under section 223 of the Act, a claimant must be both "insured for disability insurance benefits" and "under a disability." 42 U.S.C. § 423(A), (E). A claimant's insured status is based on the recency and duration of work for which the claimant paid Social Security premiums through payroll taxes. § 423(c)(1). Plaintiff qualified as insured through December 31, 2017. However, since the ALJ found that Plaintiff was not under a disability at any point through December 31, 2017, she denied Plaintiff's request for DIB. (R. at 27.)

carpenter/laborer, as those occupations require exertional, postural, and environmental abilities that exceed Plaintiff's RFC. (R. at 24-25.)

At step five, the ALJ considered whether Plaintiff could perform any work existing in the national economy given his age, education, work experience, and RFC. (R. at 25.) The ALJ found that, prior to Plaintiff's fifty-fifth birthday in 2018, jobs existed in significant numbers in the national economy that Plaintiff could have performed, such as "information clerk" under DOT 237.367-018, "routing clerk" under DOT 222.687-022, or "garment sorter" under DOT 222.687-014. (R. at 25-26.) The ALJ therefore concluded that Plaintiff was not disabled at any point through his last insured date of December 31, 2017, disqualifying him from DIB. (R. at 26.) However, once Plaintiff's age category changed to "advanced age," the ALJ applied Medical-Vocational Rule 202.02[5] to conclude that Plaintiff qualified as disabled. (R. at 26.) Accordingly, the ALJ denied Plaintiff's request for DIB but granted Plaintiff's request for SSI beginning on his fifty-fifth birthday. (R. at 27.)

## IV. ANALYSIS

Plaintiff argues that the ALJ erred by excluding Plaintiff's demonstrated need for an assistive device—specifically, a cane—from Plaintiff's residual functional capacity determination. (Pl.'s Mem. at 10.) Plaintiff contends that the record clearly establishes Plaintiff's need for a cane, and that the ALJ failed to provide any explanation for her decision to exclude Plaintiff's use of a cane from Plaintiff's RFC. (Pl.'s Mem. at 11, 14.) Because the vocational expert testified that "one

---

[5] The Medical-Vocational Guidelines are a series of rules referencing a claimant's vocational factors and RFC that presumptively direct the SSA regarding whether jobs exist in the national economy that a claimant can perform. 20 C.F.R. Pt. 404, Subpt. P. App. 2, § 200.00. Medical-Vocational Rule 202.02 directs a finding of "disabled" for a person of "advanced age" with "limited or less education" who is "skilled or semi-skilled—skills not transferrable" and whose RFC limits them to "light work." § 202.02.

cannot use a cane while performing light work," Plaintiff argues his use of a cane limits him to sedentary work, qualifying him as disabled under the SSA's Medical-Vocational Guidelines prior to his last insured date.[6] (Pl.'s Mem. at 10-11, 13.)

Defendant responds that Plaintiff failed to present medical documentation supporting his need for a cane and the circumstances in which a cane is required. (Defendant's Motion for Summary Judgment and Brief in Support Thereof at 12-13, ECF No. 19 ("Def.'s Mem.").) According to the Commissioner, the ALJ correctly declined to include Plaintiff's cane in his RFC because Plaintiff did not meet his burden of establishing that a cane was medically required. (Def.'s Mem. at 12, 14.)

### 1. Applicable Legal Standards.

Between steps three and four in the SSA's sequential process, the ALJ must determine the claimant's residual functional capacity, or RFC. 20 C.F.R. § 404.1520(a)(4). SSA regulations define RFC as "the most [a claimant] can still do despite [his] limitations." § 404.1545(a)(1). In assessing a claimant's RFC, an ALJ must consider the claimant's "ability to meet the physical, mental, sensory, and other requirements of work" based on "all the relevant evidence in [the] case record." § 404.1545(a)(1), (4). The RFC assessment includes those limitations that "result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms." SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ALJ must explain her RFC assessment by "includ[ing] a narrative discussion describing how evidence supports each conclusion citing specific medical facts . . . and nonmedical evidence." *Id*. The

---

[6] The Medical-Vocational Guidelines dictate that a claimant qualifies as disabled if he is limited to sedentary work, is "closely approaching advanced age," has limited or less education and is unskilled or has no transferable skills from past jobs. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 201.09.

7

claimant's RFC is then used at step four to determine whether the claimant can do past relevant work and at step five to determine whether the claimant can do other work given his age, education, and work experience. *Id.*

When formulating a plaintiff's RFC, an ALJ must "consider the impact of 'medically required' hand-held assistive devices." *Fletcher v. Colvin*, No. 1:14CV380, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) (citing SSR 96–9p, 1996 WL 374185 (July 2, 1996)). For instance, use of a hand-held assistive device, such as a cane or walker, may limit a plaintiff's RFC "by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(J)(4). However, only devices that are "medically required" need to be considered by the ALJ when making the RFC assessment. *Fletcher*, 2015 WL 4506699, at *8 (quoting SSR 96-9p, 1996 WL 374185 (July 2, 1996)).

For an assistive device to be "medically required," the claimant must present medical documentation: (1) supporting his need for an assistive walking device; and (2) describing the circumstances that require it. *Id.* Neither a prescription for a cane, nor the lack thereof, necessarily determines whether the claimant medically requires an assistive device. *Fletcher*, 2015 WL 4506699, at *8 (citing *Staples v. Astrue*, 329 F. App'x 189, 191-92 (10th Cir. 2009)); *Wimbush v. Astrue,* No. 4:10CV00036, 2011 WL 1743153, at *2-3 (W.D. Va. May 6, 2011) (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996)) (additional citations omitted). If the claimant fails to supply appropriate documentation, the ALJ need not include the use of an assistive walking device in the RFC assessment. *Fletcher*, 2015 WL 4506699, at *8.

When making a disability determination, the ALJ must include "adequate rationale and findings" and she must write her decision "so that a clear picture of the case can be obtained. The rationale must . . . show clearly how specific evidence leads to a conclusion." SSR 82–62, 1982

WL 31386 (Jan. 1, 1982); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 663 (4th Cir. 2017) (explaining an ALJ must "show [their] work"). The ALJ's explanation acts as a "necessary predicate to engaging in substantial evidence review[.]" *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). When an ALJ fails to adequately explain her reasoning, it precludes the "court from undertaking a 'meaningful review.'" *Id.* at 296. If the reviewing court has no way to evaluate the basis of the ALJ's decision, then the "proper course . . . is to remand to the agency for additional investigation or explanation." *Id.* at 295 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Mascio*, 780 F.3d at 637 (finding remand necessary because the court was "left to guess about how the ALJ arrived at his conclusions"). The Court may not "fill in the blanks for the ALJ[,]" nor may the Court "[h]armoniz[e] conflicting evidence," or "bolster[] inconclusive findings" as these activities fall outside the scope of review. *Patterson*, 846 F.3d at 662.

## 2. Factual Overview.

On November 2, 2016, Plaintiff fell from a significant height and suffered bilateral calcaneus fractures. (R. at 22, 860.) On November 9, 2016, Dr. Tejas Patel, M.D., an orthopedic doctor, performed surgery on Plaintiff's left foot and set his right foot without surgery.[7] (R. at 832, 866.) When Plaintiff was discharged from the hospital on November 11, 2016, both of his lower extremities were splinted, and he could not bear weight on his feet. (R. at 857, 861, 934.) During the next three months, Plaintiff continued treatment with Dr. Patel and his primary care physician, Dr. Audie Florida. (R. at 772, 1004-05.) In January 2017, Plaintiff transitioned from casts to CAM[8]

---

[7] Plaintiff's application for DIB and SSI asserts an alleged onset date of November 9, 2016.
[8] Controlled Ankle Movement or "CAM" boots are foot braces that allow minimal movement in the hinge of the ankle enabling patients to walk even with intensive injuries to the lower extremities. *See CAM Walker Boots*, AliMed, https://www.alimed.com/cam-walker-boots/ (last visited Nov. 8, 2020).

boots, but was still in a wheelchair and unable to stand. (R. at 772, 1004-05.) On February 24, 2017, Plaintiff started physical therapy and began ambulating with a walker. (R. at 1223.)

By March 2017, Plaintiff had gained some mobility but continued experiencing pain in his feet and symptoms of nerve damage across the tarsal tunnel area of his left foot.[9] (R. at 1011, 1071.) Plaintiff returned to his orthopedic doctor, Dr. Patel, on March 27, 2017. (R. at 1056.) On that date, the physician noted that Plaintiff "continue[d] to use a crutch/cane for ambulation assistance[,]" and that Plaintiff was experiencing pain, numbness, and symptoms of nerve damage in his left foot. (R. at 1056.) To address the continuing nerve damage symptoms, Plaintiff underwent a left tarsal tunnel release procedure on April 27, 2017. (R. at 1028, 1033.) During the procedure, Dr. Patel removed bone fragments from the tarsal tunnel and observed "a lot of scar tissue around the medial calcaneal nerve." (R. at 1180.) Plaintiff healed well after the operation but continued having pain and sensory deficits across his left foot. (R. at 1114.) X-rays taken on June 19, 2017 showed "[n]o significant change in alignment of mildly depressed fracture . . . with persistent incongruity of the subtalar joint" and revealed that the bones were "markedly osteopenic."[10] (R. at 1206.)

On August 1, 2017, Plaintiff's physician noted that Plaintiff walked with an "antalgic gait"[11] and used a "single point cane." (R. at 1197.) Additionally, on October 9, 2017, Plaintiff had pain and stiffness with all motion of both ankles and reported having recently fallen twice. (R. at

---

[9] More specifically, Plaintiff exhibited a positive Tinel's sign, which is a test doctors use to diagnose nerve problems. The doctor lightly taps on the affected area; if the patient feels a tingling sensation or "pins and needles," it indicates nerve damage. *Tinel sign*, Stedmans Medical Dictionary (27th ed. 2000), Westlaw STEDMANS 820740.
[10] "Osteopenia" refers to a decrease in calcification or density of bone. *Osteopenia*, Stedmans Medical Dictionary (27th ed. 2000), Westlaw STEDMANS 638360.
[11] "Antalgic gait" is an irregular gait that occurs when someone experiences pain on weight-bearing. The "stance" phase of gait is shortened on the affected side. *Antalgic gait*, Stedmans Medical Dictionary (27th ed. 2000), Westlaw STEDMANS 359070.

1187, 1189.) At this same appointment, Plaintiff received an injection of a steroid and anesthetic into his right foot. (R. at 1186.)

On November 13, 2017, a full year after Plaintiff's accident, Plaintiff reported back to his orthopedic doctor, Dr. Patel, and complained of bilateral foot pain. (R. at 1180.) Dr. Patel noted that Plaintiff used a cane or walker on that date. (R. at 1181.) Testing on Plaintiff's left foot continued to indicate nerve damage. (R. at 1182.) Dr. Patel recommended a fusion of the subtalar joint but noted that Plaintiff would have to quit smoking first to reduce the risk of complications. (R. at 1183.) Finally, on July 25, 2018, Plaintiff appeared with a cane at his hearing in front of the ALJ. (R. at 52.) Plaintiff testified that he needs the cane because he "can't walk in a straight line" and that he "shuffles" and "wobbles" when he walks. (R. at 53.)

### 3. The ALJ Failed to Adequately Explain the Exclusion of a Cane from Plaintiff's Residual Functional Capacity, Requiring Remand.

The ALJ failed to explicitly analyze whether Plaintiff's need for a cane should be included in Plaintiff's RFC. In her written decision, the ALJ recognized Plaintiff's continuing use of assistive devices, including a cane, following Plaintiff's injury and subsequent surgery. (R. at 22 (wheelchair until January 2017), 22 (CAM boots), 22-23 (finding Plaintiff used a crutch, cane, or walker for ambulation in February and June 2017). Despite these frequent references, the ALJ determined that Plaintiff could perform light work with mobility limitations, stating that Plaintiff "can stand for four hours; walk for four hours; climb ramps and stairs frequently; climb ladders, ropes, and scaffolds occasionally; [and] crawl occasionally." (R. at 21.)

The ALJ explained her RFC determination as follows:

> As[] shown above, the claimant alleges he has been disabled since the alleged onset [date] due to lower extremity fractures, but the evidence supports a narrow range of light abilities. The claimant had relatively mild findings on examination after treatment. The right lower extremity healed quicker and while the claimant had more difficulty with the left foot/ankle healing, *he was ambulating with a cane within a couple of months*. He remained able to

11

>wiggly [sic.] the toes on both feet, and he could get into a regular shoe. He had some nerve damage in his feet but he could ambulate. He had problems with prolonged standing/walking, which are addressed in the above-assessed residual functional capacity.

(R. at 23 (emphasis added).) The ALJ went on to find that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in the decision." (R. 23.)

Despite these numerous references to Plaintiff's use of a cane, as well as the medical records described above, the ALJ failed to expressly analyze the medical necessity of Plaintiff's cane. The ALJ additionally did not analyze whether plaintiff met his burden of providing medical documentation establishing his need for a cane, nor did the ALJ make a finding that Plaintiff progressed in his recovery to the point that he no longer needs a cane. The ALJ simply omitted the cane from Plaintiff's RFC without explanation.

The ALJ's decision to omit Plaintiff's assistive device from his RFC without explanation "lacks the required logical bridge between the evidence and [the ALJ's] conclusion." *Molden v. Saul*, No. 1:19-2576-SVH, 2020 WL 4013378, at \*18 (D.S.C. July 16, 2020) (citing *Monroe*, 826 F.3d at 189). When the record reflects a plaintiff's frequent use of an assistive device, an ALJ's failure to explain the device's omission from the RFC or to provide a narrative discussion on whether the assistive device is medically necessary, leaves a reviewing court to guess about how the ALJ reached her conclusion. *See Smith v. Saul,* No. 7:19-CV-00101-FL, 2020 WL 3442327, at \*6 (E.D.N.C. May 13, 2020) (remanding for ALJ's lack of discussion on medical necessity of plaintiff's cane). These inadequacies frustrate the Court's meaningful review of the ALJ's decision because it is unclear whether the ALJ considered the Plaintiff's need for a cane, but rejected the need, or simply failed to consider the issue at all. *See id.*

12

The ALJ's omissions are not harmless. While the Court recognizes that in some cases the ALJ's decision not to discuss a plaintiff's need for an ambulatory device may be harmless—for example when neither treating physician opinions nor the objective medical evidence support plaintiff's need for an assistive device—this is not the case here. *See, e.g., Williams v. Berryhill*, No. 5:17-CV-408-D, 2018 WL 4576781, at *4 (E.D.N.C. May 18, 2018) (finding ALJ's lack of explanation as to the medical necessity of plaintiff's cane to be harmless error when none of plaintiff's treatment providers had opined that a cane was necessary and ample evidence existed in the record showing that plaintiff could ambulate effectively without a cane).[12] As described above, the record in this case is replete with medical records relating to Plaintiff's foot injuries, subsequent treatment of his injuries, Plaintiff's prognosis and need for additional treatment, and his inability to ambulate without assistance. In addition, the record reflects medical documentation of physical symptoms that coincide with the Plaintiff's cane use. Plaintiff experienced pain and stiffness in his lower extremities, sensory deficits, decreased range of motion, antalgic gait, tenderness to palpation, nerve symptoms, osteopenia, and joint incongruity. (R. at 1114, 1180, 1182, 1189, 1197, 1206.) Although Plaintiff was never prescribed a cane, Plaintiff has provided sufficient medical documentation supporting his need for a cane to at least warrant discussion of the issue by the ALJ. *See Fletcher*, 2015 WL 4506699, at *8.

And although the Defendant advocates that remand is not necessary because the Plaintiff has failed to meet his burden of providing medical documentation supporting his need for an

---

[12] Specifically, the evidence in *Williams* showed that the plaintiff had "generally normal physical examinations" and "generally normal gait." *Williams*, 2018 WL 4576781, at *4. Although the plaintiff sometimes reported for doctor's appointments limping and using a cane, other times she "paced around the office restlessly *and did not limp*." *Id.* (emphasis in original). Finally, the plaintiff appeared at her administrative hearing without a cane and testified that she no longer used a cane because she had misplaced it during a move that had occurred a month prior to the hearing. *Id.*

13

assistive device (Def.'s Mem. at 15.), Defendant's approach would require the Court to review the medical documentation and weigh the evidence in the case. Such involvement by the Court is outside the scope of review. *See Patterson*, 846 F.3d at 662; *Radford*, 734 F.3d at 296 ("Just as it is not our province to 'reweigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ],' it is also not our province . . . to engage in these exercises in the first instance.") (internal citation omitted). The Court therefore remands for additional administrative proceedings without reaching the issue of whether substantial evidence supports the ALJ's RFC determination.

## V. CONCLUSION

For the reasons set forth above, the Court hereby ORDERS that Plaintiff's Motion for Summary Judgment (ECF No. 15) be GRANTED to the extent it seeks reversal and remand of the Commissioner's decision and DENIED to the extent it seeks an order directing the award of benefits, that Defendant's Motion for Summary Judgment (ECF No. 19) be DENIED and the final decision of the Commissioner be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

An appropriate Order consistent with this Memorandum Opinion shall be issued.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

/s/ 
Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: November 25, 2020